# EXHIBIT 7

# EXHIBIT C

to Duke University's Motion
for Summary Judgment

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:16-cv-01038

| | | |
|---|---|---|
| ARIANA QAYUMI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Declaration of Greg Stotsenberg |
| v. | ) | |
| | ) | |
| DUKE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

Greg Stotsenberg, pursuant to the provisions of 28 U.S.C. § 1746, declares as follows:

1. My name is Greg Stotsenberg. I am over twenty-one years of age and competent to testify in all other respects. I have personal knowledge of the matters set forth below. If called upon to testify about these facts, I could and would do so.

2. Since Feb 1, 1999, I have been employed in the Duke University Police Department and have progressed to the rank of Captain over the Criminal Investigations unit. I have been in charge of investigations since 2009.

3. On the night of April 21, 2011, I received a call from Major Sara-Jane Raines regarding two incidents of possible sexual misconduct involving multiple male Duke students and unknown women. Upon investigation, Sgt. David Dyson and I determined that both reported incidents involved Colby Leachman and Brian Self. One of the alleged incidents that I investigated did not appear to be a Duke student (Incident

1). The other alleged incident that I investigated involved rumors of a sexual encounter recorded on a cell phone (Incident 2). Initially both incidents were mixed together. There were a number of students who had heard the rumors but few who actually had firsthand knowledge. It took investigators a while to weed out those who had only heard about the two incidents and try to find out names of potential victims, suspects, and first-hand witnesses. I did not learn of any other incidents in the course of my investigation.

4. I began investigating those incidents immediately upon receiving the call from Major Raines. My report of a portion of my investigation on April 21-22, 2011, is attached as Exhibit 1 to this Declaration. It was the regular practice of members of the Duke University Police Department to prepare such reports as part of our official duties and this report was kept in the course of the regularly conducted investigation.

5. On April 21, 2011 at 11:25 pm, I met with Krystal Clark, the Duke employee who submitted the report about the alleged incidents. During that meeting, Ms. Clark provided the name of the Duke student who told her about these incidents, but I also learned that the story was not based on this student's firsthand knowledge. On April 22, 2011 at 12:10 am, I met on Duke's campus with the student who made the report to Ms. Clark. During that meeting, I obtained additional details about what the student had heard and obtained names of two possible witnesses for Incident 1. I called both of these possible witnesses that same night. I reached one of them, who reported that she had only heard rumors, but provided names of additional possible witnesses.

6. Later in the early morning hours of April 22, 2011, I returned to Duke Police Headquarters to continue my investigation and search for possible witnesses.

7. On April 22, 2011, I met with David Dyson to continue the investigation. So far the rumors involving Incident 1 involved a possible intoxicated female victim from either UNC-Chapel Hill or University of Virginia. I contacted Sheila Broderick at the Duke University Women's Resource Center to inquire whether her department had been approached by any possible victims of an alleged assault that occurred at Duke University on or around April 9, 2011. Ms. Broderick was aware of the reported incident, but had not been contacted by any possible victims from this incident. Ms. Broderick also agreed to contact the Women's centers at UNC-Chapel Hill and University of Virginia to ask if anyone had reported being victimized at Duke on or around April 9, 2011. Ms. Broderick later called me back to report that her contacts had received no such report.

8. On April 22, 2011 at 12:50 pm, I accompanied David Dyson to the room of a female student who lived in the Southgate dormitory and whose name had been provided as a possible witness. That woman told us what she had heard about a sexual incident that occurred on April 9, 2011, involving at least three males and a woman who was not a student at Duke (Incident 1). The woman reported, however, that she did not witness this event.

9. On April 22, 2011 at 3:30 pm, I met with a male student who had reportedly witnessed a portion of the sexual encounter of Incident 1 on April 9, 2011.

3

This student confirmed that he had seen the female non-Duke student engaged in a sexual encounter on the night of April 9, 2011. This witness had recently participated in a bystander intervention training and made it a point to ask the female if she was OK. She responded that she was fine and was a willing participant. Additionally, the witness stated that the woman did not appear to be intoxicated and that the woman was awake and alert.

10. On April 22, 2011 at 4:00 pm, I met with another male student whose name had been provided as a potential witness of Incident 1. This student confirmed that he and his girlfriend were both present in the Southgate dorm on the night of April 9, 2011. This witness told investigators that a fourth student not involved in the incident with the three males inside the room had opened the door and pushed the couple into the dorm room as some sort of joke. During this moment when they were in the room they had spoken with the unknown woman who was in bed with one of the males. This witness told me he and his girlfriend had confirmed with the woman on multiple occasions that she was alright and that she verbally confirmed the same on each occasion.

11. At this point in the investigation of both Incident 1 and Incident 2, potential alleged suspects began to come to the surface as Colby Leachman, Brian Self, and Frank Jones. Sgt. Dyson and I interviewed the three young men about both incidents. All three men reported that they did not know the identity of the woman from Incident 1. Additionally, all of them denied that any non-consensual sexual activity had occurred.

4

12. I ultimately decided to close the investigation involving Incident 1 because a non-involved, third-party witness, whom I deemed credible, felt that the sexual activity was consensual, and no complaining victim could be identified or located.

13. On April 27, 2011, Investigator Dyson and I spoke with Colby Leachman, Brian Self, and Frank Jones about both reported incidents — the April 9 incident (Incident 1) and the incident reportedly involving a cell phone video (Incident 2).

14. During the meeting with Colby Leachman on April 27, 2011, Mr. Leachman initially denied having any knowledge about a videotape being made while he and another male were engaging in a sex act with a woman. Mr. Leachman further denied that his cell phone had a camera. At my request, Mr. Leachman gave verbal consent for me to look at his phone. I quickly located videos saved on the device. I searched the phone and found a video that was time stamped as being filmed on March 6, 2011. I viewed the video. The image quality was very poor, but the audio was clear. Initially Leachman said the video was of his girlfriend from the prior year. I confronted him with the time stamp and then he ultimately told us that the voices heard in the video were those of himself and Ariana Qayumi, and that the persons depicted in the video were Ariana Qayumi and Brian Self.

15. David Dyson and I then met with Ariana Qayumi on April 27, 2011. During that meeting, Ms. Qayumi told me that apparently, she had had sex on the night of March 5-6, 2011, but that she did not remember it. She said that she had had too much to drink. I explained to her that if she thought she was a victim of sexual assault or sexual

5

misconduct, then Duke had resources available, including a full criminal investigation, a Title IX investigation, no-contact orders, disciplinary action against the involved students through the Office of Student Conduct, and counseling and advising through the Women's Resource Center. Ms. Qayumi stated that the sexual encounter with both Leachman and Self was consensual and that she was alright and did not want an investigation. She also stated that she did not want any of the other services. We gave her our business cards with our contact information and asked her to call us if she changed her mind. She said she would.

16. On that same day, April 27, 2011, Sgt. Dyson and I obtained consent from Mr. Leachman to take the phone to have it searched and copied. We next met with William McFayden of Durham Police Forensics. Mr. McFayden recovered a copy of a video file made on March 6, 2011, at 5:08 am, which lasts for 18 seconds. That video file was the same video file that I had seen on Mr. Leachman's phone. Although the video quality is poor, the transcript of the conversation from the video is included in David Dyson's report that is attached as Exhibit 2 to this Declaration, as are further details about my interaction with Mr. McFayden. A copy of that video is attached to this Declaration as Exhibit 3.

17. Ms. Qayumi and her mother had contacted investigators several times to inquire about the investigation. Every time, investigators told the Qayumis that an investigation was closed per her desire, and that it could be re-opened. It was explained that she would need to meet with us and sit down for a full interview.

6

18. The policy and practice of the Duke University Police Department in cases of reported sexual assault is that DUPD does not press the complainant to make reports or pursue charges. It is the policy of DUPD to allow complainants this control, since pressing a complainant to proceed when she or he is not ready can re-victimize the complainant. Consistent with this DUPD policy, as well as national standardized training and our accreditation standards, I tell complainants in cases of reported sexual assault that every part of the process is driven by them. The principle behind this policy is to empower the complainant.

19. On March 20, 2013, Ms. Qayumi had decided to set up an interview to begin an investigation. I interviewed Ariana Qayumi at Duke's Women's Center. During this interview it was clear to me that Ms. Qayumi appeared to be mixing up the stories she had heard. She kept sharing information from both Incident 1 and Incident 2, telling them in the first person. When I asked her is this information you remember or information she had heard from friends she confirmed it was information she had heard from friends. This was consistent with numerous students having knowledge of the rumors. When she slowed down and told me the incident she remembered, the details of the first incident dropped away and only information from the second incident involving the video were left. During this interview, I showed Ms. Qayumi the video that is attached to this Declaration as Exhibit 3. Ms. Qayumi identified herself as the female voice in the video and Colby Leachman as the male voice in the video. The criminal investigation was reviewed with the Durham District Attorney and was declined

prosecution. Upon Ms. Qayumi's, request she was referred to the Office of Student Conduct to initiate their process for the case.

20. On March 29, 2013, I provided my notes of my March 20 interview to Stephen Bryan. Both my email to Stephen Bryan and my notes of the March 20, 2013, interview are included within what has been identified to me as the Undergraduate Conduct Board's Hearing Packet on pages 8 through 11 of that packet.

21. On July 12, 2013, I testified during the student conduct hearing arising out of Ms. Qayumi's allegations. While I was at the hearing, the video that is attached to this Declaration as Exhibit 3 was played.

22. During my testimony at this hearing, I referred to an incident that had been reported as a potential "gang rape." The incident that I characterized during the hearing as a potential "gang rape" is Incident 1 and the same incident that I describe in paragraphs 3-12 above. Other than that incident and the incident involving Ms. Qayumi, I am not aware of any other alleged incidents of sexual misconduct involving Colby Leachman or Brian Self.

23. Throughout my employment at Duke University, it has been my practice to create reports of any interactions that I have in the course of an investigation.

24. I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 30, 2017

*greg stotsenberg*
Greg Stotsenberg